EXHIBIT

tabbies

1

# CLASS ACTION SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made effective on December 22, 2014 by and between Plaintiffs Mark Shallin, Bryan Winslow, Juan Terry Jr., Melissa Pennington and Laytoya Manigault (collectively, "Plaintiffs") and Defendants Payless Shoesource, Inc., Collective Brands, Inc., Collective Brand Services, Inc., Payless Shoesource, Inc. 401(k) Profit Sharing Plan and Payless Shoesource, Inc., as Plan Administrator (collectively, "Defendants" or "Payless"). Plaintiffs and Defendants collectively are referred to in this Agreement as the "Parties."

## I.   DEFINITIONS

In addition to other terms defined in this Agreement, the terms below have the following meaning in this Agreement:

A.   "Action" means the action entitled "*Shallin, et al., v. Payless Shoesource, Inc, et al.*," Case No. 3:14-CV-00335-RNC, filed in the United States District Court for the District of Connecticut and any amendments to the Complaint thereto.

B.   "Manigault Action" means the action entitled *Manigault, et al., v. Payless Shoesource, Inc, et al.*," filed in the United States District Court, Western District of New York, Case No. 1:14-CV-00664 RJA, which Plaintiffs Melissa Pennington and Laytoya Manigault voluntarily dismissed, after their individual and class claims where incorporated into the Action.

C.   "New York Class" means (1) all individuals who are currently employed, or formerly have been employed, by Payless as a Store Leader in New York, and (2) are/were classified as non-exempt (thus eligible for overtime compensation), at any time from August 14, 2008, through the date of Preliminary Approval of the Settlement. There are approximately 197 New York Class Members. A list of the New York Class Members is attached to this Agreement as Exhibit A.

D.   "New York Settlement Class" means (1) all individuals who are currently employed, or formerly have been employed, by Payless as a Store Leader in New York, and (2) are/were classified as non-exempt (thus eligible for overtime compensation), at any time from August 14, 2008, through the date of Preliminary Approval of the Settlement, and (3) who signed a Consent to Join, and (4) whose Consent to Join was timely received by the Settlement Administrator.

E.   "National Class" means (1) all individuals who are currently employed, or formerly have been employed, by Payless as a Store Leader in the United States (except in New York state), and (2) are/were classified as non-exempt (thus eligible for overtime compensation), at any time from March 14, 2011, through the date of Preliminary Approval of the Settlement. There are approximately 2673 National Class Members. A list of the National Class Members is attached to this Agreement as Exhibit B.

F.  "National Settlement Class" means (1) all individuals who are currently employed, or formerly have been employed, by Payless as a Store Leader in the United States (except in New York state), and (2) are/were classified as non-exempt (thus eligible for overtime compensation), at any time from March 14, 2011, through the date of Preliminary Approval of the Settlement, and (3) who signed a Consent to Join, and (4) whose Consent to Join was timely received by the Settlement Administrator.

G.  "New York Class Period" means the period of time from August 14, 2008, through Preliminary Approval of the Settlement.

H.  "National Class Period" means the period of time from March 14, 2011, through Preliminary Approval of the Settlement.   Provided, however, for National Settlement Class members in California only, the class period only covers the time period May 18, 2013, through the date of Preliminary Approval of the Settlement and National Class members in Pennsylvania only, the class period only covers the time period December 9, 2012 through the date of Preliminary Approval of Settlement.

I.  "Class Counsel" means Mitchell Feldman of Feldman Law Group, P.A.

J.  "Class Counsel Fees and Litigation Expenses Payment" mean the amounts awarded to Class Counsel by the Court to compensate them for, respectively, their attorneys' fees and litigation expenses incurred in connection with the Action, including their pre-filing investigation, their filing of the Action and all related litigation activities, this Settlement, and all post-Settlement compliance procedures.  For purposes of this paragraph related to Class Counsel Fees and Litigation Expenses Payment, Action shall also include all attorney's fees and litigation expenses expended or incurred by Class Counsel in or related to the Manigault Action.

K.  "Class Counsel Fees and Litigation Expense Escrow Account" means the Escrow Account set-up with Wells Fargo Bank, National Association, by Defendants and into which Defendants shall fund payment of Class Counsel Fees and Litigation Expenses Payment within 10 days of the Parties executing the Agreement and Bank approval and creation of Escrow Account.  The Escrow Agent shall release payment to the Settlement Administrator within three (3) business days after the Settlement becoming Final in an amount approved by the *Shallin* Court.

L.  "Class Data" means, for each National and New York Class Member, his or her name; last-known mailing address; and telephone number; Social Security number; his or her total workweeks in Covered Position during the Class Period; and a field indicating whether he or she is currently employed by Payless.  Class Data is confidential and shall be treated as such.

M.  "Class Member" means either a National Class Member or a New York Class Member.

2

N.   "Class Notice" means the Notices of Proposed Settlement of Class and Collective Action, Preliminary Approval of Settlement, and Hearing Date for Final Court Approval as evidenced by Exhibit C to this Agreement and incorporated by reference into this Agreement. There shall be no other secondary notice by social media or other electronic means, except for a static non-interactive website containing the contents of the Class Notice.

O.   "Class Representatives" means named Plaintiffs Mark Shallin, Bryan Winslow, Juan Terry, Melissa Pennington, and Latoya Manigault, and the individuals that filed opt-in notices in the Action prior to November 25, 2014 (identified in Exhibit D to the Agreement).

P.   "Class Representative Service Payments" means any payments made to Plaintiffs Mark Shallin, Bryan Winslow, Juan Terry, Melissa Pennington, and Latoya Manigault, in their capacity as Class Representatives, and the individuals that filed opt-in notices in the Action prior to November 25, 2014 (identified in Exhibit D to the Agreement), to compensate them for initiating the Action and Manigault Action, performing work in support of the Action and Manigault Action and/or undertaking the risk of liability for attorneys' fees and expenses in the event they were unsuccessful in the prosecution of the Action and Manigault Action. These Payments are in addition to the Plaintiffs' Settlement Share as Class Members. The Total amount for the Class Representative Service Payments shall not exceed $30,000.00.

Q.   "Consent to Join" means the New York Class or National Class Claim Form (which will be included in the Class Notice) submitted by U.S. Mail containing the Class Member's live signature or by email to the Settlement Administrator containing as an attachment a copy of the class member's Claim Form with a live signature. Claim forms containing electronic signatures, typed signatures and emails without a copy of the Claim Form containing live signature are not valid. Claims may not be submitted by any other means including, but not limited to, registration through the settlement website, *etc.* Timely filing a Consent to Join is commonly referred to as opting-in to the Settlement.

R.   "Court" means the United States District Court, District of Connecticut.

S.   "Covered Position" means the position of Store Leader or Store Manager that was classified as non-exempt (eligible for overtime) with Payless within the United States during the National Class Period or New York Class Period.

T.   "Defendants' Counsel" means Kevin E. Hyde and Leonard Feigel of Foley & Lardner LLP.

U.   "Final" means that the Settlement has been finally approved by the Court, and either: (i) the Second Circuit Court of Appeals or the United States Supreme Court has rendered a final judgment affirming the Court's final approval of the Settlement without material modification, and the applicable date for seeking

further appellate review has passed; or (ii) the applicable date for seeking appellate review of the Court's final approval of the Settlement has passed without a timely appeal or request for review having been made.

V.  "Final Approval Hearing" means a hearing, if required by the Court, to determine whether to approve finally and implement the terms of this Agreement.

W.  "Maximum Settlement Amount" means the $2,900,000.00 maximum total amount potentially payable by Payless (inclusive of Class Counsel Fees and Litigation Expenses Payment, Class Representative Service Payments, Settlement Administrative Costs, and the Potential Class Settlement Amount).

X.  "Gross Settlement Amount" means the actual amount paid by Payless inclusive of payment to the National Settlement Class and New York Settlement Class (based on the percentage of Class Members that timely Consent to Join), Class Representative Service Payments, Settlement Administrative Costs and Class Counsel Fees and Litigation Expenses Payment. This amount is all-inclusive of all payments contemplated in this Agreement or in resolution of the Action. The Gross Settlement Amount does not include and Payless is not required to pay, any tax, deduction, withholding, payment, penalty or levy Settlement Class Members or the Class Administrator are required to pay.

Y.  "Potential Class Settlement Amount" means the Maximum Settlement Amount minus Class Representative Service Payments, Settlement Administrative Costs, and Class Counsel Fees and Litigation Expenses Payment. The Parties have agreed that the Potential Class Settlement Amount equals $ 1,848,333.33. The Potential Class Settlement Amount assumes 100% of Settlement Class Members timely filing Consents to Join.

Z.  "Class Settlement Amount" means the actual amount payable to the National and New York Settlement Classes. Class Settlement Amount equals the Potential Class Settlement Amount multiplied by the opt-in percentage of National Settlement Class and New York Settlement Class together. For illustrative purposes only, if the Potential Class Settlement is $1,500,000.00 and 10% of National and New York Classes timely file Consents to Join the Class Settlement Amount would equal $150,000.00.

AA.  "Potential National Settlement Amount" equals 85% of the Potential Class Settlement Amount, which is the potential settlement amount available for payment to the National Settlement Class, assuming 100% of the National Class timely filing Consents to Join. The Parties have agreed that the Potential National Settlement Amount equals $1,571,083.33.

BB.  "National Settlement Amount" equals the Potential National Class Settlement Amount multiplied by the opt-in percentage of the National Class. This is the actual amount paid out to the National Settlement Class in order to resolve all federal and related state law claims. For example, if 50% of the National Class

4824-5653-7121.3

timely files Consents to Join the National Settlement Amount would equal $785,541.67.

CC. "Potential New York Settlement Amount" equals 15% of the Potential Class Settlement Amount, which is the potential settlement amount available for payment to the New York Settlement Class, assuming 100% of New York Class timely filing Consents to Join. The Parties have agreed that the Potential New York Settlement Amount equals $277,250.00.

DD. "New York Settlement Amount" equals the Potential New York Settlement Amount multiplied by the opt-in percentage of the New York Class. This is the actual amount paid out to the New York Settlement Class in order to resolve all New York wage and hour claims. These are the claims that were asserted in the Manigault Action.

EE. "Preliminary Approval of the Settlement" means the Court's preliminary approval of this Settlement Agreement without material change.

FF. "Material Change" means limiting or reducing the scope of release to be granted by Settlement Class Members, limiting or reducing the binding effect of the Settlement on Settlement Class Members or increase in the total "out-of-pocket" payments by Payless.

GG. "Released Claims" means the claims released by the Class Representatives and/or Settlement Class Members as set forth in Section III.H.1 and III.H.2.

HH. "Settlement" means the full, final and complete disposition of the Action effectuated by this Agreement which disposition shall include a dismissal of the Action *with prejudice*.

II. "Settlement Administrator" means the entity that handles and is responsible for the settlement administration, whether Class Counsel acts as Settlement Administrator or engages a vendor or third party to administer the Settlement, such vendor or third party must be a business entity in good standing under the applicable state corporate laws and operating/engaging in the business of class action settlement administration. If Class Counsel hires a vendor or third party to administer the class settlement, Defendants will not unreasonably withhold approval of that vendor or third party. Class Counsel will be liable and responsible for the Settlement Administrator.

JJ. "Settlement Administrative Costs" means the total amount that Defendants' shall pay to Class Counsel for Settlement Administrator costs and expenses, as approved by the Court, up to $55,000. Under no circumstances shall Defendants be liable for paying more than $55,000 for Settlement Administrative Costs.

KK. "Settlement Class Member" means either a National Settlement Class Member or a New York Settlement Class Member.

4824-5653-7121.3

LL.   "Settlement Share" means each Settlement Class Member's share of the Class Settlement Amount as provided by this Agreement.

## II.   RECITALS

A.   The Parties agree and represent that all Definitions and Recitals are true and accurate and incorporated into this Agreement.   The Parties also agree and acknowledge the defined National and New York Settlement Classes are appropriate as to scope and that the Parties have stipulated to such defined classes for settlement purposes related to this Agreement.

B.   On March 14, 2014, Plaintiffs initiated the Action.  Specifically, Mark Shallin and Bryan Winslow filed a Complaint in the United States District Court of Connecticut alleging a collective class action under the Fair Labor Standards Act ("FLSA") and a Rule 23 class action claim for alleged violations of the Employee Retirement Income Security Act ("ERISA") against Payless, Case No. 3:14-CV-00335-RNC.   Defendants filed a Motion to Dismiss the ERISA claims and Plaintiffs voluntarily dismissed their ERISA claims on August 29, 2014.   The Plaintiffs allege in the remaining claims that Payless failed to pay a class of their Store Leaders throughout the United States for all overtime hours worked in violation of the FLSA.

C.   On June 23, 2014 Payless and Plaintiffs participated in mediation in Atlanta, Georgia before Mediator Hunter R. Hughes of Rogers & Harden.  The parties did not reach a resolution but agreed to continue settlement discussions as the litigation ensued.

D.   On August 14, 2014, the Manigault Action was initiated.  Specifically, Melissa Pennington and Latoya Manigault filed a Complaint in the United States District Court, Western District of New York, Case No. 1:14-CV-00664 RJA, alleging a Rule 23 class action under New York state wage and hour law that were substantially the same, if not identical, to the FLSA claims in the Connecticut case.

E.   On September 8, 2014, the Plaintiffs filed a motion for conditional certification and to facilitate notice under 29 U.S.C. § 216(b) (the "FLSA") to a purported national class of Store Leaders.  The Court granted Payless an extension of time to respond to the Motion.  Payless intended to file a response in opposition to the motion for conditional certification and, by requesting and receiving the extension, in no way conceded the validity of any of Plaintiffs' claims.

F.   On September 15, 2014, Payless filed a Motion with the Judicial Panel of Multi-District Litigation ("JPML") to Transfer and Consolidate the Action and Manigault Action for coordinated or consolidated pretrial proceedings.

G.   On November 10, 2014, Payless Moved for a Stay of the Action until the JPML issued an order on Defendants' Motion to Transfer and Consolidate.  The JPML

4824-5653-7121.3

set oral argument on Payless's Motion to Transfer and Consolidate for December 4, 2014.

H.   The Court has not ruled on the issue of Conditional Certification in the Action.

I.   On December 2, 2014, the parties after extensive arms-length negotiations (including a day-long meeting of Class Counsel and Defendants' Counsel in person) reached a preliminary settlement agreement resolving the class and all claims in both the Action and Manigault Action. The parties, through counsel, memorialized the principal terms of the preliminary settlement agreement. The preliminary settlement agreement provided that the parties would consolidate the Action and Manigault Action within one District Court for settlement purposes and work in good faith to draft a Final Settlement Agreement (this document is that Final Settlement Agreement).

J.   On December 17, 2014, the Plaintiffs filed an Unopposed Motion for Leave to file a Third Amended Complaint adding the claims in the Manigault Action to the Action. Thereafter, the Manigault Action Plaintiffs dismissed their lawsuit in the United States District Court for the Western District of New York without prejudice. By so doing, for all practical purposes, the Action and Manigault Action were consolidated before this Court (the District Court of Connecticut).

K.   Payless withdrew its Motion to Consolidate and Transfer from consideration by the JPML on December 3, 2014.

L.   This Agreement represents a compromise and settlement of highly disputed claims after extensive investigation, discovery, extensive motion practice and protracted settlement negotiations. Nothing in this Agreement is intended or will be construed as an admission by Defendants that the claims in the Action of Plaintiffs or the Class have merit or that Defendants bear any liability to Plaintiffs or the Class on those claims or any other claims, or as an admission by Plaintiffs that Defendants defenses in the Action have merit.

Based on these Recitals, the truth and accuracy of which is acknowledged by all Parties, the Parties agree to fully resolve, settle and terminate the Action and related claims on the following terms:

## III.   SETTLEMENT TERMS AND CONDITIONS

A.   **Maximum Settlement Amount**. Subject to the terms and conditions of this Agreement, and compliance by all of the Parties, the Maximum Settlement Amount that Defendants will pay under this Settlement is $2,900,000.00. This amount is all-inclusive of all payments contemplated in the Settlement. Due to the opt-in nature of the Settlement, the Parties acknowledge and agree that the actual amount paid by Payless may be less than the Maximum Settlement Amount.

B.   **Class Counsel Fees and Litigation Expense Escrow Account.** Subject to the terms and conditions of this Agreement, Defendants shall establish Class Counsel Fees and Litigation Expense Escrow Account to hold funding and manage payment of Class Counsel Fees and Litigation Expenses to Class Counsel. Defendants shall use their best efforts, based upon bank availability and compliance with applicable banking regulations, to fund the Class Counsel Fees and Litigation Expense Escrow Account with $966,666.67, which the Parties agreed is the stipulated maximum payment for Class Counsel Fees and Litigation Expenses, on or before December 31, 2014, or as soon as practicable thereafter subject to the Parties execution of this Agreement and Bank approval and creation of Escrow Agreement. Within three (3) business days after the Settlement is Final, the Escrow Agent shall pay the Settlement Administrator the total amount of Class Counsel Fees and Litigation Expenses awarded and approved by the Court. If the Class Counsel Fees and Litigation Expenses awarded by the Court are less than $966,666.67, the remaining money will be returned to Defendants. Any interest and earnings on this account will revert and be paid to Defendants.

C.   **Class Settlement Amount.** Subject to the terms and conditions of this Agreement, the Class Settlement Amount that Defendants will pay under this Settlement is based on the following methodology and shall equal: National *Settlement Amount (based on opt-in percentage of* National *Class) + New York Settlement Amount (based on opt-in percentage of New York Class) + Class Representative Service Payments + Settlement Administrator Costs + Class Counsel Fees and Litigation Expenses.* This amount is all-inclusive of all payments contemplated in the Settlement. All of the Class Settlement Amount will be disbursed pursuant to this Agreement, and none of it will revert to Defendants (except as set out Section III.B above).

D.   **Payments from the Class Settlement Fund.** Subject to the terms and conditions of this Agreement, the Settlement Administrator will make the following payments out of the Gross Settlement Amount as follows:

1.   **Class Representative Service Payments:** In addition to their respective Settlement Share, Class Representatives will apply to the Court for service and incentive awards of not more than the following: $3,800.00 each for named Plaintiffs Mark Shallin, Bryan Winslow, Juan Terry, Melissa Pennington, and Latoya Manigault and for $200.00 each to the remaining fifty-five (55) individuals that filed opt-in notices in the Action prior to November 25, 2014. The total Class Representative Service Payments shall not exceed $30,000. Payless will not oppose Class Representative Service Payments up to this amount. The Settlement Administrator will pay the Class Representative Payments approved by the Court out of the Class Settlement Amount. If the Court approves Class Representative Payments of less than the amounts requested, the remainder will be retained in the National Settlement Amount for distribution to the National Settlement Class. Payroll tax withholding and deductions will not be taken from the Class Representative Payments, but instead a Form 1099

will be issued to Class Representatives with respect to these payments. Class Representatives shall be responsible and liable for payment of all taxes and penalties, levy, or fines, if any, in connection with the Class Representatives Service Payments.

2.   **To Class Counsel:**  As part of the settlement approval process, the parties will disclose and seek approval from the Court for the stipulated amount to Class Counsel Fees and Litigation Expenses of $966,666.67, which is one third of the Maximum Settlement Amount.  Class Counsel may apply to the Court for an award of not more than $$966,666.67, which equals 33.3% of the Maximum Settlement Amount as their Class Counsel Fees and Litigation Expenses Payment, which the Defendants stipulate is fair and reasonable.  The Settlement Administrator, upon receiving payment from the Escrow Agent for the Class Counsel Fees and Litigation Expenses Payment, will pay the amount approved by the Court out of the Class Settlement Amount.  Payroll tax withholding and deductions will not be taken from the Class Counsel Fees and Expenses Payment and instead one or more Form 1099s will be issued to Class Counsel with respect to those payments. Class Counsel shall be responsible and liable for payment of all taxes and penalties, levy, or fines, if any, in connection with the Class Counsel Fees and Litigation Expenses Payment.

3.   **To Class Counsel for Settlement Administration Costs**:  The Settlement Administrator will pay Class Counsel $55,000 for Settlement Administration Costs out of the Class Settlement Amount unless the Court directs otherwise. Class Counsel will be liable for class administration and handle the administration in-house or hire a vendor to administer the Settlement.

4.   **To National Settlement Class**: The National Settlement Amount will be paid by the Settlement Administrator to the National Settlement Class. The individual amounts to each National Settlement Class member will be based on the Settlement Share described in Section III.E(1)(a) below.

5.   **To New York Settlement Class**:  The New York Settlement Amount will be paid by the Settlement Administrator to the New York Settlement Class.  The individual amounts to each New York Settlement Class member will be based on the Settlement Share described in Section III.E(1)(b) below.

E.   **Settlement Share.**  Subject to the terms and conditions of this Agreement, the Settlement Administrator will pay Settlement Shares from the Class Settlement Amount to each of the Settlement Class Members.

1.   **Calculation.** · The Settlement Share for each Settlement Class Member will be calculated as follows:

9

    a.    <u>National Settlement Class</u>. The Settlement Share for each National Settlement Class Member will be calculated by: (1) determining the total number of work weeks each National Settlement Class Member worked while in a Covered Position during the National Class Period; (2) adding together the total work weeks worked by all the National Settlement Class Members while in a Covered Position during the National Class Period; (3) dividing the individual National Settlement Class Member's total work weeks by the total work weeks by all the National Settlement Class Members; and (4) multiplying the result by the amount of the National Settlement Amount to determine the individual Settlement Share for the particular National Settlement Class Member.

    b.    <u>New York Settlement Class</u>.  The Settlement Share for each New York Settlement Class Member will be calculated by: (1) determining . the total number of work weeks each New York Settlement Class Member worked while in a Covered Position during the New York Class Period; (2) adding together the total work weeks worked by all the New York Settlement Class Members while in a Covered Position during the New York Class Period; (3) dividing the individual New York Settlement Class Member's total work weeks by the total work weeks by all the New York Settlement Class Members; and (4) multiplying the result by the amount of the New York Settlement Amount to determine the individual Settlement Share for the particular New York Settlement Class Member.

2.    **Withholding**.

    a.    For Settlement Class Members, fifty percent (50%) of each Settlement Share will be designated as wages (the "Wage Portion") and fifty percent (50%) will be designated as interest and liquidated damages (the "Interest and Penalty Portion").

    b.    The Wage Portion of each Settlement Share will subject to wage withholdings, including employee and employer withholdings, and will be reported on IRS Form W-2, whereas the Interest and Penalty Portion will not be subject to wage withholdings, and will be reported on IRS Form 1099.  The Settlement Administrator will withhold those entire withholdings related to the Wage Portion of the Settlement Shares from the Class Settlement Amount. The Settlement Class Members shall be responsible and liable for payment of all taxes and penalties, levy, or fines, if any, in connection with their settlement share.

F.   **Appointment of Settlement Administrator.** Class Counsel will serve as the Settlement Administrator or engage the services of a qualified settlement administrator to assist in whole or part to act as Settlement Administrator. If a Settlement Administrator is hired such Administrator must be a business entity in good standing under the applicable state corporate laws that operates/engages in the business of class action settlement administration. Defendants' reserve the right to seek Court intervention to replace the Settlement Administrator in the event there is a real concern that the Settlement Administrator has demonstrated the inability to handle the responsibilities. In either event, Class Counsel will be liable for class administration and handle the administration in-house or hire a vendor or third party to administer the class settlement. If Class Counsel hires a vendor or third party to administer the class settlement, Defendants must approve that vendor, who will sign a confidentiality/non-disclosure agreement in order to protect the Class Member's personal identification information, but Defendants will not unreasonably object to the Class Counsel's selection. Class Counsel and any person or entity engaged by Class Counsel will, as a condition of appointment, agree to be bound by this Agreement with respect to the performance of its duties and its compensation. The Settlement Administrator's duties will include preparing, printing, and mailing the Class Notices to all Class Members; conducting skip tracing on any Class Notice returned by the U.S. Postal Service as non-deliverable, and re-mailing the Class Notice to the Class Member's new address; providing the Parties with bi-weekly status reports about the delivery of Class Notices and receipt of Consents to Join in the Settlement; calculating Settlement Shares; issuing the checks to effectuate the payments due under the Settlement; issuing the tax reports required under this Settlement; and otherwise administering the Settlement pursuant to this Agreement. The Settlement Administrator upon receiving a Consent to Join shall confirm that such individual was member of either the National Class or New York Class. The Settlement Administrator shall promptly alert Class Counsel and Counsel for Defendants of any ambiguities or questions pertaining to an individual's eligibility to participate in the Settlement and/or the calculation of any Settlement Share, and shall consult with Class Counsel and Defendants' counsel to resolve all disputes concerning these subjects. The Settlement Administrator shall not pay invalid claims. The Settlement Administrator shall be paid up to $55,000, as approved by the Court, as reasonable fees and expenses per Section III(D)(3), including the cost of printing and mailing the Class Notices. Upon written request, Defendants may review or audit all records related to the Class Administration and settlement payments thereof.

G.   **Procedure for Approving Settlement.**

    1.   **Motion for Preliminary Approval of Settlement by the Court.**

        a.   The Parties will jointly move the Court for an order giving Preliminary Approval of the Settlement and Conditionally Certifying the Classes and for Court Supervision of the Class Notice ("Motion for Preliminary Approval"). The Parties will use

11

their best efforts to Jointly file the Motion for Preliminary Approval by January 27, 2015, or a date shortly thereafter. In the event the Court requires a Final Approval Hearing, the parties will use best efforts to jointly set a date to occur within (14) days of the close of the class notice period. Any disagreement among the Parties concerning the Class Notices or other documents necessary to implement the Settlement will be referred to the Court.

b.    At any required hearing on the Joint Motion for Preliminary Approval, the Parties will jointly appear in-person or telephonically, support the granting of the motion, and submit a Proposed Order Granting Certification of National Class and New York Class and Preliminary Approval of Settlement; Approving Class Notice and Related Materials; Appointing Settlement Administrator; and Scheduling Final Approval Hearing (if required by the Court) in the form evidenced by Exhibit E to this Agreement and incorporated by reference into this Agreement.

c.    Should the Court decline to preliminarily approve all material aspects of the Settlement (including but not limited to the scope of release to be granted by Settlement Class Members, the binding effect of the Settlement on Settlement Class Members increase in the total "out-of-pocket" payments by Defendants or scope of the General Release to be granted by the Class Representatives), the Parties agree to continue to work together in good faith to obtain preliminary approval including filing up to three Motions for Preliminary Approval, as long as the terms of this Settlement Agreement are not materially changed. Notwithstanding, the Parties may choose to file more than three Motions seeking Preliminary Settlement Approval. Payless shall have the option to terminate this Class Action Settlement Agreement if Preliminary Approval of Settlement and Certification of the Classes for settlement purposes is not granted, despite the Parties good faith efforts, thus rendering the Settlement null and void and the Parties will have no further obligations under it, including but not limited to any requirement of payment hereunder. However, Defendants shall have no right to void or otherwise withdraw from the Settlement solely on the basis that the Court alters the agreed-upon distribution formula or allocation of each Settlement Class Member's Settlement Share between claims described in Sections III.C. or III.E, provided, however, that that the Class Settlement Amount is not increased. Plaintiffs will prepare the first draft of the Motion for Preliminary Approval and Class Certification and provide to Defendants' counsel for review and editing.

12

2.   **Notice to Class Members; Opt-in Procedure and Timing.** After the Court enters its order granting Preliminary Approval of the Settlement, Class Members will be provided with the Class Notice as follows:

a.   All Class Members will receive the Class Notices in the form evidenced by Exhibit C (other than formatting changes to facilitate printing by the Settlement Administrator). The Class Notices will be tailored for each individual and have pre-printed information showing: the individual's name; contact information; dates of employment in a Covered Position during the Class Period and a description of the Settlement methodology. In order to Consent to Join (opt-in to the Settlement), the Class Member must return a claims form containing the Class Member's live signature by U. S. mail postmarked no later than 30 days after the date on which the Settlement Administrator mails the Class Notice or by email to the Settlement Administrator containing as an attachment a copy of the class member's Claim Form with a live signature no later than 30 days after the date on which the Settlement Administrator mails the Class Notice.

b.   No later than ten (10) business days after the Court enters its order granting Preliminary Approval of the Settlement, Defendants will provide the Settlement Administrator with Class Data necessary to determine if a claimant is a Class Member and to calculate Class Members' individual Settlement Shares of those Class Members who timely file a Consent to Join. The Class Data shall include the Class members': dates of employment, last known address, telephone number, date of birth, and social security number. This information will otherwise remain confidential and will not be disclosed to anyone, except: (a) as required to applicable taxing authorities, (b) to carry out the reasonable efforts described in section III.F, (c) to Class Counsel to the extent necessary to allow them to advise, assist and otherwise fulfill their duties to Class Members; (d) pursuant to Defendants' express written authorization; or (e) by order of the Court.

c.   No later than 30 days after the Court grants Preliminary Approval of the Settlement, the Settlement Administrator will mail the Class Notices to all Class Members via first-class regular U.S. Mail.

d.   The Settlement Administrator shall be responsible to trace the mailing address of any Class Member for whom a Class Notice is returned by the U.S. Postal Service as undeliverable. These reasonable steps shall include, at a minimum, the tracking of all undelivered mail; performing skip trace address searches for all returned mail; and promptly re-mailing to Class Members for whom new addresses are found. If the Class Notice is re-mailed,

the Settlement Administrator will note for its own records and notify Class Counsel and Defendants' Counsel of the date and address of each such re-mailing as part of a bi-weekly status report provided to the Parties. Counsel for both parties will be entitled to receive from the Settlement Administrator any updated address information about a Class Member as the Settlement Administrator obtains such information.

e.   If a Class Notice is returned because of an incorrect address, the Settlement Administrator will promptly, and not longer than five (5) days from receipt of the returned packet, conduct a search for a more current address for the Class Member and re-mail the Class Notice to the Class Member.

f.   As part of its bi-weekly status report, the Settlement Administrator will inform Class Counsel and Defendants' Counsel of any objections to the Settlement it receives.

g.   Not later than five (5) days before the date by which the Parties file their Joint Motion for Final Approval of the Settlement, the Settlement Administrator will serve on the Parties and file with the Court a declaration of due diligence setting forth its compliance with its obligations under this Agreement. The declaration shall summarize the number of Settlement Class members that timely and validly submit objections, pursuant to Section 111.G.4, general summary of the specific objections, and list of the Settlement Class Members to timely and validly submitted objections and state whether such Settlement Class Members anticipated addressing their objections to the court, at the Final Approval Hearing, if hearing scheduled, or otherwise, either personally or through counsel.   Prior to the Final Approval Hearing, if required by the court, the Settlement Administrator will supplement its declaration of due diligence if any material changes occur from the date of the filing of its prior declaration.

3.   **Disputing Information In Class Notice.** Class Members will have the opportunity to contest the Class Data pre-printed on their individualized Class Notice by submitting via first class mail, postmarked no later than 30 days after the date on which the Settlement Administrator mails the Class Notices, a written challenge along with supporting documentation to the Settlement Administrator set forth above. Any challenges to the information pre-printed on the Class Notice must be supported by documentary evidence; the Settlement Administrator will reject any challenge not supported by such evidence. In the event of such a dispute, Defendants will manually review its payroll and personnel records to verify the correct information. Defendants' records have a rebuttable presumption of correctness. After consultation with Class Counsel, the

Class Member and Defendants, the Settlement Administrator will make a determination of the disputed information and that determination will be final, binding, and non-appealable on the Parties and the Class Member, and non-appealable.

4.  **Objections to Settlement Terms.** Class Members may submit objections to the Settlement pursuant to the following procedures only:

   a.  **Objections to Settlement Terms.** The Class Notice will provide that Class Members who wish to object to the Settlement terms must submit to the Settlement Administrator, by First Class Mail postmarked no later than 30 days after the Settlement Administrator mails the Class Notices, a written objection including: (i) your full name, address, and telephone number; (ii) your dates of employment and job title(s) while employed with Payless; (iii) a written statement of all grounds for the objection accompanied by any legal support for such objections; (iv) copies of any papers, briefs, or other documents upon which the objection is based; (v) a list of all persons who will be called to testify in support of the objection; (vi) a statement of whether you intend to appear before the court at the Final Approval Hearing, if a hearing required by court, or other means if no Final Approval Hearing is required; and (vii) your signature, even if you are represented by counsel.  If you intend to appear at the Final Approval Hearing through counsel, the objection must also state the identity of all attorneys representing you who will appear at the Final Approval Hearing.  A Class Member who does not submit a written comment or objection in the manner and by the deadline specified above will be deemed to have waived any objections and will be foreclosed from making any objections (whether at the Final Approval Hearing, by appeal or otherwise) to the Settlement Terms.

   b.  **Report.**  Not later than 10 days after the deadline for submission of objections to Settlement Terms, the Settlement Administrator will provide the Parties with a complete and accurate list of all objections.   Additionally, no later than 5 days before the Final Approval Hearing, the Settlement Administrator shall file with the Court a declaration summarizing the number of Settlement Class Members that submitted objections, a general summary of the specific objections and list of Settlement Class Members that preserved their rights to and are anticipated to address their objections to the Court, at the Final Approval Hearing or otherwise, either personally or through counsel.

5.  **No Solicitation of Objection or Request Not to Participate.** Neither the Parties nor their respective counsel will solicit or otherwise encourage

15

directly or indirectly any Class Member to participate in the Settlement, to object to the Settlement, appeal from the Judgment, or elect or not to elect to timely file a Consent to Join in the Settlement.

6. **Additional Briefing and Final Approval.**

    a.    Class Counsel may file with the Court their unopposed application for the Class Counsel Fees and Litigation Expenses, as stipulated herein, simultaneously with the filing of any Joint Motion for Final Approval of the Settlement or the time of the parties.

    b.    If no written objections have been timely and properly received by any class members, the Parties will use best efforts to submit their Joint Motion for Final Approval and Entry of Judgment within 14 days after the close of the Class Notice Opt in Period, but under no circumstances will the Parties failure jointly file their motion within the 14 day period be deemed a material breach of this Agreement and/or render this Agreement, null, void or voidable. If written objections are timely and properly received from Class Members, the Parties will notify the Court and use best efforts to seek a Final Approval Hearing to occur within 21 days after the close of the Class Notice Period, subject to the Court's availability, but under no circumstances will failure to schedule the Final Approval Hearing within the 21 day period be deemed a material breach of this Agreement and/or render this Agreement null, void, or voidable. The Parties will work to have an agreed upon Joint Motion for Final Approval prepared within 21 days of the Court Approving the Joint Motion for Preliminary Approval of the Settlement.

    c.    If any opposition is filed, then not later than seven (7) days before a Final Approval Hearing, or another date to be set by the Court, the Parties may file a reply in support of the motion for Final Approval of the Settlement. Plaintiffs and Class Counsel may file a reply in support of their motions for the Class Representative Services Payment, the Class Counsel Fees and Litigation Expenses Payment.

    d.    Should the Court decline final approval of all material aspects of the Settlement (including but not limited to the scope of release to be granted by Settlement Class Members, the binding effect of the Settlement on Settlement Class Members, increase in the total "out-of-pocket" payments by Defendants or scope of general release by Class Representatives), the Parties agree to continue to work together in good faith to obtain final approval including filing up to three Motions for Final Approval as long as the terms of this Agreement need not be materially changed. Notwithstanding, the

16

4824-5653-7121.3

Parties may choose to file more than three Motions seeking Final Settlement Approval. Payless shall have the option to terminate this Agreement if Final Approval of Settlement and certification of the Classes referenced herein for settlement purposes is not granted, despite the Parties good faith efforts, thus rendering the Settlement null and void and the Parties will have no further obligations under it, including but not limited to any requirement of payment hereunder. However, an award by the Court of a lesser amount than stipulated by the parties for the Class Representative Service Payments, or Class Counsel Fees and Litigation Expenses Payment will not constitute a material modification to the Settlement within the meaning of this paragraph. Plaintiffs' counsel will prepare the first draft of the Joint Motion for Final Approval and class certification and provide to Defendants' counsel for review and editing.

e.  Upon final approval of the Settlement by the Court at or after the Final Approval Hearing, the Parties will present for the Court's approval and entry the Proposed Order Granting Final Approval and Judgment in the form evidenced by Exhibit F to this Agreement and incorporated by reference into this Agreement. After entry of the Judgment, the Court will have continuing jurisdiction over the Action and the Settlement solely for purposes of: (i) enforcing this Agreement, (ii) addressing settlement administration matters, and (iii) addressing such post-Judgment matters as may be appropriate under court rules or applicable law.

7.  **Waiver of Right to Appeal.** Provided that the Judgment is consistent with the terms and conditions of this Agreement, Plaintiffs and Settlement Class Members who did not timely submit an objection to the Settlement, Defendants, and their respective counsel hereby waive any and all rights to appeal from the Judgment, including all rights to any post-judgment proceeding and appellate proceeding, such as a motion to vacate judgment, a motion for new trial, and any extraordinary writ, and the Judgment therefore will become final and nonappealable at the time it is entered. The waiver does not include any waiver of the right to oppose any appeal, appellate proceedings or post-judgment proceedings. This paragraph does not preclude Plaintiffs or Class Counsel from appealing from a refusal by the Court to award the full Class Representative Service Payments or Class Counsel Fees and Litigation Expenses Payment sought by them or Defendants from appealing issues related to the scope of the release(s) it is to receive as part of the Settlement.

8.  **Vacating, Reversal, or Material Modification of Judgment on Appeal or Review.** If, after a notice of appeal, a petition for review, or a petition for *certiorari*, or any other motion, petition, or application, the reviewing court vacates, reverses, or modifies the Judgment such that there is a

17

material modification to the Settlement (including, but not limited to, the scope of release to be granted by Settlement Class Members the binding effect of the Settlement on Settlement Class Members, increase in the total "out-of-pocket" payment by Defendants, or scope of the General Release by Class Representatives), and that court's decision is not completely reversed and the Judgment is not fully affirmed on review by a higher court, then either Plaintiffs or Defendants will have the right to void the Settlement, which the Party must do by giving written notice to the other Parties, the reviewing court, and the Court not later than fourteen (14) days after the reviewing court's decision vacating, reversing, or materially modifying the Judgment becomes Final. A vacation, reversal, or modification of the Court's award of the Class Representative Payments or the Class Counsel Fees Payment or Litigation Expenses Payment will not constitute a vacation, reversal, or material modification of the Judgment within the meaning of this paragraph, provided that Defendants obligation to make payments under this Settlement will remain limited by the Class Settlement Amount.

9. **Funding of Settlement.** Within thirty (30) days after Final Approval of the Settlement, Defendants will fund the Class Settlement Amount (except the Class Counsel Fees and Litigation Expenses, which will be funded in the Escrow Account on or before December 31, 2014, or as soon as practicable thereafter subject to the Parties execution of this Agreement and Bank approval and creation of Escrow Agreement. If after a notice of appeal, a petition for review, or a petition for *certiorari*, or any other motion, petition, or application, the reviewing court vacates, reverses, or modifies the Judgment such that there is a material modification to the Settlement (including, but not limited to, the scope of release to be granted by Settlement Class Members or the binding effect of the Settlement on Settlement Class Members), then all amounts in the Class Settlement Amount will be returned to Defendants. This paragraph does not preclude Plaintiffs or Class Counsel from appealing from a refusal by the Court to award the full Class Representative Service Payments or Class Counsel Fees and Litigation Expenses Payment sought by them.

10. **Timing of Provision of Class Counsel Fees and Litigation Expenses Payments and Class Representative Service Payments.** Within seven (7) business days after the Judgment becomes Final as defined in this Agreement, the Settlement Administrator will pay the Class Representative Service Payments and Class Counsel Fees and Litigation Expenses Payments. Class Representative Services Payments are further conditioned on the valid execution by the Class Representatives of a General Release.

11. **Timing of Provision of Settlement Shares.** Within seven (7) business days after the Judgment becomes Final, the Settlement Administrator will pay the Settlement Shares to all Settlement Class Members who have

submitted a timely and approved Claim Form, except that the Settlement Administrator will not pay Settlement Shares to any Settlement Class Member whose Class Notice is returned as undeliverable and who is not located before Settlement Shares are mailed under the timing of this provision.

12.    **Class Members not Notified of Class Settlement.** If prior to the time Payless funds the Settlement Amounts for distribution by the Settlement Administrator the Settlement Administrator and/or the parties become aware of Class Members who did not receive notice of the Settlement or payments through no fault of their own or excusable neglect ("Reserve Class Members"), Payless shall have exclusive authority to determine whether or not such Reserve Class Members will be included in the Settlement. If any Reserve Class Members are permitted to join the Settlement, Defendants will need to provide additional funding. Each Reserve Class Member's Settlement Share will be equal to the amount he or she would have received, in accordance with the formulas set forth in Sections III.C or 111.E and be subject to the same Release of Claims in Section III.H.

13.    **Uncashed Settlement Share Checks.** A Settlement Class Member must cash his or her Settlement Share check within 180 days after it is mailed to him or her. If a check is returned to the Settlement Administrator, the Settlement Administrator will make all reasonable efforts to re-mail it to the Settlement Class Member at his or her correct address. If Settlement Class Member's Settlement Share check is not cashed within 150 days after its last mailing to the Settlement Class Member, the Settlement Administrator will send the Settlement Class Member a letter informing him or her that unless the check is cashed in the next 30 days, it will expire and become non-negotiable, and offer to replace the check if it was lost or misplaced but not cashed. If the check remains uncashed by the expiration of the 30-day period after this notice, the funds represented by those checks will be returned to Payless.

14.    **Final Report by Settlement Administrator to Court.** Within 10 days after final disbursement of all funds from the Class Settlement Amount, the Settlement Administrator will serve on the Parties and file with the Court a declaration providing a final report on the disbursements of all funds from the Class Settlement Amount. Payless will pay the Settlement Administrative Costs ten (10) business days after the Settlement Administrator submits the Final Report referenced in this section.

H.    **Release of Claims.**

1.    **Class Representatives.** Class Representatives will execute a General Release in the form attached as Exhibit G.

19

2.      **Settlement Class Members.**  As of the date the Settlement becomes Final, all National Settlement Class Members release and waive any and all claims, including, specifically, any claims under state or federal law, or the Fair Labor Standards Act, as amended, based on alleged unpaid overtime compensation for "off-the-clock-work;" claims for overtime compensation by Store Leaders who were transitioned from exempt salaried status employees under the FLSA to non-exempt at any time(s)during their employment based on supervisory hours; claims for overtime compensation by Store Leaders claiming they were misclassified as exempt salaried employees; claims for overtime compensation during any period a Class Member was paid on a fluctuating workweek method; claims for unpaid wages based on incorrect bonus payments or failure to include bonus payments within the calculation of regular rate from March 14, 2011 to the date of Preliminary Approval, against Defendants, and any parent, subsidiaries or affiliates, that were pled or could have been pled in the Action based on the factual allegations set forth in the Third Amended Complaint attached as Exhibit H.  As of the date the Settlement becomes Final, all New York Settlement Class release and waive any and all claims, including, specifically, FLSA and New York state wage and hour claims based on alleged unpaid overtime compensation for "off-the-clock-work;" claims for overtime compensation by Store Leaders who were transitioned from exempt salaried status employees under the FLSA/New York law to non-exempt at any time(s)during their employment based on supervisory hours; claims for overtime compensation by Store Leaders claiming they were misclassified as exempt salaried employees; claims for overtime compensation during any period a Class Member was paid on a fluctuating workweek method; claims for unpaid wages based on incorrect bonus payments or failure to include bonus payments within the calculation of regular rate from August 14, 2008, to the date of Preliminary Approval, against Defendants, and any parent, subsidiaries or affiliates, that were pled or could have been pled in the Action based on the factual allegations set forth in the proposed Third Amended Complaint attached as Exhibit H.

3.      **To the extent Settlement Class Members are/were employed in the state of California or otherwise entitled to protections under California law, Waiver of Rights Under California Civil Code Section 1542.**  The claims released by Class Representatives, Settlement Class Members, and Class Counsel include all such claims, whether known or unknown by the releasing party, that fall within the scope of the applicable Released Claims.  Thus, even if Class Representatives, a Settlement Class Member, or Class Counsel discover facts and/or claims in addition to or different from those that they now know or believe to be true with respect to the subject matter of their respective Class Representatives' Released Claims, Class's Released Claims, or Class Counsel's Released Claims, those claims will remain released and forever barred.  Therefore, with respect to those released claims, Class Representatives, Settlement Class

4824-5653-7121.3

Members, and Class Counsel expressly waive and relinquish the provisions, rights and benefits of section 1542 of the California Civil Code, which reads:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

4.   **Class Counsel.**  As of the date the Settlement becomes Final, and except as otherwise provided by this Agreement, Class Counsel and any counsel associated with Class Counsel release and waive any claim to costs and attorneys' fees and expenses against Defendants arising from or related to the Action and the Manigault Action (the "Class Counsel's Released Claims").

I.   **Miscellaneous Terms.**

1.   **No Admission of Liability.**

   a.   Defendants deny that they have engaged in any unlawful activity, have failed to comply with the law in any respect, or has any liability to anyone under the claims asserted in the Action.  This Agreement is entered into solely for the purpose of compromising highly disputed claims.  Nothing in this Agreement is intended or will be construed as an admission of liability or wrongdoing by Defendants, or an admission by Plaintiffs that any of her claims was non-meritorious or any defense asserted by Defendants was meritorious.

   b.   Whether or not the Judgment becomes Final, neither the Settlement, this Agreement, any document, statement, proceeding or conduct related to the Settlement or the Agreement, nor any reports or accounting of those matters, will be:  (i) construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to Defendants or any other beneficiary of the releases granted under this Agreement (the "Released Parties"), including, but not limited to, evidence of a presumption, concession, indication or admission by any of the Released Parties of any liability, fault, wrongdoing, omission, concession or damage; or (ii) disclosed, referred to or offered in evidence against any of the Released Parties, in any further proceeding in the Action, or any other civil, criminal or administrative action or proceeding except for purposes of effectuating the Settlement pursuant to this Agreement.

21

c.     This section and all other provisions of this Agreement notwithstanding, any and all provisions of this Agreement may be admitted in evidence and otherwise used in any and all proceedings to enforce any or all terms of this Agreement, or in defense of any claims released or barred by this Agreement.

2.   **Integrated Agreement.** After this Agreement is signed and delivered by all Parties and their counsel, this Agreement and its exhibits will constitute the entire agreement between the Parties relating to the Settlement, and it will then be deemed that no oral representations, warranties, covenants, or inducements have been made to any Party concerning this Agreement or its exhibits other than the representations, warranties, covenants, and inducements expressly stated in this Agreement, including Definitions and Recitals, and its exhibits and the parties Preliminary Settlement Agreement.

3.   **Attorney Authorization.**   Class Counsel and Defendants' Counsel warrant and represent that they are authorized by Plaintiffs and Defendants, respectively, to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement. The Parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement. In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Agreement, or on any supplemental provisions that may become necessary to effectuate the terms of this Agreement, the Parties will seek the assistance of the Court, and in all cases all such documents, supplemental provisions and assistance of the court will be consistent with this Agreement.

4.   **Modification of Agreement.** This Agreement, and any and all parts of it, may be amended, modified, changed, or waived only by an express written instrument signed by all Parties or their successors-in-interest.

5.   **Agreement Binding on Successors.**  This Agreement will be binding upon, and inure to the benefit of, the successors of each of the Parties.

6.   **Applicable Law.**  All terms and conditions of this Agreement and its exhibits will be governed by and interpreted according to the laws of the State of Connecticut, without giving effect to any conflict of law principles or choice of law principles.

7.   **Cooperation in Drafting.** The Parties have cooperated in the drafting and preparation of this Agreement.  This Agreement will not be construed against any Party on the basis that the Party was the drafter or participated in the drafting.

22

8.    **Fair Settlement.**  The Parties and their respective counsel believe and warrant that this Agreement reflects a fair, reasonable, and adequate settlement of the Action and have arrived at this Agreement through arms-length negotiations, taking into account all relevant factors, current and potential.

9.    **Headings.**  The descriptive heading of any section or paragraph of this Agreement is inserted for convenience of reference only and does not constitute a part of this Agreement.

10.    **Notice.**  All notices, demands or other communications given under this Agreement will be in writing and deemed to have been duly given as of the third business day after mailing by United States mail, addressed as follows:

*To Plaintiffs and the Class:*

Mitchell L. Feldman, Esq.
mfeldman@fmlawgroup.us
Feldman Law Group, P.A.
501 N. Reo Street
Tampa, Fl 33609
(813) 639-9366
(813) 639-9376 *fx*

*To Defendants:*

Kevin E. Hyde
Leonard V. Feigel
Foley & Lardner LLP
One Independent Square
Suite 1300
Jacksonville, Florida 32202
(904) 359-2000 (phone)
(904) 359-8700 (fax)
Khyde@foley.com

23

and

General Counsel
Payless ShoeSource, Inc.
3231 S.E. 6th Street
Topeka, KS 66607

11.    **Execution in Counterparts.**  This Agreement may be executed in one or more counterparts by facsimile or email, which for purposes of this Agreement shall be accepted as an original.  All executed counterparts and each of them will be deemed to be one and the same instrument provided that counsel for the Parties will exchange between themselves original signed counterparts.   Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.


Signature pages to follow:

24

IV.   **EXECUTION BY PARTIES AND COUNSEL**

The date of this Agreement is as set forth above.

*Mark Shallin*

---
Mark Shallin,

---
Bryan Winslow

---
Juan Terry

---
Melissa Pennington

---
Latoya Manigault

---
MITCHELL FELDMAN
PLAINTIFFS' COUNSEL

---
Doug Treff
Executive Vice President – CAO
For Defendants Payless

---
KEVIN HYDE
COUNSEL FOR DEFENDANTS

25

4824-5853-7121.3

## IV.   EXECUTION BY PARTIES AND COUNSEL

The date of this Agreement is as set forth above.

_____
Mark Shallin,

_____
Bryan Winslow

_____
Juan Terry

_____
Melissa Pennington

_____
Latoya Manigault

_____
MITCHELL FELDMAN
PLAINTIFFS' COUNSEL

_____
Doug Treff
Executive Vice President – CAO
For Defendants Payless

_____
KEVIN HYDE
COUNSEL FOR DEFENDANTS

25

4824-3653-7121.3

## IV.   EXECUTION BY PARTIES AND COUNSEL

The date of this Agreement is as set forth above.

_____
Mark Shallin,

_____
Bryan Winslow

_____
Juan Terry

_____
Melissa Pennington

_____
Latoya Manigault

_____
MITCHELL FELDMAN
PLAINTIFFS' COUNSEL

_____
Doug Treff
Executive Vice President – CAO
For Defendants Payless

_____
KEVIN HYDE
COUNSEL FOR DEFENDANTS

25

## IV.    EXECUTION BY PARTIES AND COUNSEL

The date of this Agreement is as set forth above.

_____
Mark Shallin,

_____
Bryan Winslow

_____
Juan Terry

_____
Melissa Pennington

_____
Latoya Manigault

_____
MITCHELL FELDMAN
PLAINTIFFS' COUNSEL

_____
Doug Treff
Executive Vice President - CAO
For Defendants Payless

_____
KEVIN HYDE
COUNSEL FOR DEFENDANTS

4824-5653-7121.3

## IV.   EXECUTION BY PARTIES AND COUNSEL

The date of this Agreement is as set forth above.

_____
Mark Shallin,

_____
Bryan Winslow

_____
Juan Terry

_____
Melissa Pennington

_____
Latoya Manigault

_____
MITCHELL FELDMAN
PLAINTIFFS' COUNSEL

_____
Doug Treff
Executive Vice President - CAO
For Defendants Payless

_____
KEVIN HYDE
COUNSEL FOR DEFENDANTS

25

## IV.    EXECUTION BY PARTIES AND COUNSEL

The date of this Agreement is as set forth above.

_____

Mark Shallin,

_____

Bryan Winslow

_____

Juan Terry

_____

Melissa Pennington

_____

Latoya Manigault

_____

MITCHELL FELDMAN
PLAINTIFFS' COUNSEL

_____

Doug Treff
Executive Vice President - CAO
For Defendants Payless

_____

KEVIN HYDE
COUNSEL FOR DEFENDANTS

25